## In re LIND.

(Circuit Court, N. D. California. December 1, 1911.)

1. ALIENS (§ 66*)—NATURALIZATION OF SEAMEN—CONSTRUCTION OF STATUTE—"SEAMAN."

Rev. St. § 2174 (U. S. Comp. St. 1901, p. 1334), which authorizes the naturalization of any foreign seaman who "shall have served three years on board of a merchant vessel of the United States," after having declared his intention to become a citizen, on production of his certificate of discharge and good conduct during that time, is sufficiently broad to embrace every "seaman" who has served the required time on an American vessel, coastwise or other.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 130; Dec. Dig. § 66.*

For other definitions, see Words and Phrases, vol. 7, pp. 6374, 6375.]

2. ALIENS (§ 66*)—NATURALIZATION OF SEAMEN—CONSTRUCTION OF STATUTE.

Under such section the "certificate of discharge and good conduct" required may be made by either a master or shipping commissioner, although the service was rendered in the local coastwise trade.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 130; Dec. Dig. § 66.*]

On application of Gustaf Anderson Lind for admission to citizenship. Application granted.

Henry F. Marshall, for petitioner.

George A. Crutchfield, for Naturalization Bureau.

VAN FLEET, District Judge. This is an application for naturalization, to which the representative of the government has interposed certain objections, which will be considered. The petition was filed under section 2174, R. S. (U. S. Comp. St. 1901, p. 1334), which provides:

"Every seaman, being a foreigner, who declares his intention of becoming a citizen of the United States in any competent court, and shall have served three years on board of a merchant vessel of the United States subsequent to the date of such declaration, may, on his application to any competent court and the production of his certificate of discharge and good conduct during that time, together with the certificate of his declaration of intention to become a citizen, be admitted a citizen of the United States," etc.

Together with his declaration of intention, which was made on August 12, 1904, petitioner presented in support of his application four certificates of discharge—two being shipping commissioners' certificates, and two masters' certificates—showing service on American coastwise vessels for a period, subsequent to the date of his declaration, aggregating 3 years, 8 months, and 19 days, and evidencing good conduct during such service; and no question is made of the sufficiency of the evidence to establish the necessary length of service and good character of the applicant, if the case is within the statute and the certificates comply with the law. But the government contends that the facts do not make a case falling within the provisions of section 2174.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

192 F.—14

[1] The first objection is this: Section 2174, as originally enacted, was one of the provisions (section 29) of the act of June 7, 1872, entitled "An act to authorize the appointment of shipping commissioners by the several Circuit Courts of the United States to superintend the shipping and discharge of seamen engaged in merchant ships belonging to the United States, and for the further protection of seamen." Stat. 1872, c. 322, p. 268. Thereafter, on June 9, 1874, Congress passed an act wherein it limited the operation of this act by providing:

"That none of the provisions of an act entitled 'An act to authorize the appointment of shipping commissioners by the several circuit courts of the United States to superintend the shipping and discharge of seamen engaged in merchant ships belonging to the United States and for the further protection of seamen' shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage." Stat. 1874, c. 260, vol. 18, p. 64 (U. S. Comp. St. 1901, p. 3064).

It is contended that, as the last-named act is sufficiently broad in its terms to embrace all of the provisions of the act of 1872, including the then section 29, and as the scope of the latter section in its codified form has not been changed, it must be held that seamen serving on vessels engaged in the coastwise trade, other than in the excepted instance mentioned in the act of 1874, are not to be regarded as serving on merchant vessels of the United States within the contemplation of the present section, and consequently are not entitled to the benefit of its provisions for the purpose of admission to citizenship. And it is argued in support of this contention that the purpose of the section, both as it existed in the act of 1872 and as it now exists, was to enable seamen serving on merchant vessels, who by reason of their calling were necessarily absent from home ports for extended periods, to obtain naturalization by a more simple and ready method than that provided under the general provisions of section 2165, R. S. (U. S. Comp. St. 1901, p. 1329); that this necessity only arose in the cases of seamen on long voyages, and did not arise with those serving in coastwise vessels trading between neighboring ports on the same coast, since they are more frequently in and out of their home ports; hence the exemption from the limitation in the act of 1874 only of those serving in coastwise vessels between the Atlantic and Pacific ports, Congress apparently seeing no reason why seamen engaged in coastwise trade on a single coast should be exempted from the provisions of the naturalization laws applicable to aliens generally.

This objection would have some force and plausibility, perhaps, were it not for the subsequent history of the legislation; although it may well be doubted if Congress, notwithstanding the comprehensive language of the act of 1874, ever intended to include section 29 as being within the mischiefs aimed at by the limitation in that act. McCarthy v. Steam Propeller, etc., Co. (D. C.) 4 Fed. 818. But whether such was or was not then the intention need not be determined, since

it will be clearly seen that in the transformation that section underwent immediately thereafter it was entirely relieved from any such restriction. On June 22, 1874, the first revision of the general statutes was adopted by Congress (Revised Statutes 1874), and in that revision section 29 of the act of 1872 was taken therefrom and made a part of the title on Naturalization as section 2174. R. S. tit. 30, "Naturalization" (U. S. Comp. St. 1901, p. 1329). By the same revision all other provisions of the act of 1872 were carried into the Revised Statutes as part of title 53, "Merchant Seamen" (U. S. Comp. St. 1901, p. 3061). The effect of this revision was to repeal the act of 1872 as it existed at the date of the act of 1874, the act of revision; section 5596 (page 3750) providing that all acts of Congress passed prior to the 1st day of December, 1873, "any portion of which is embraced in any section of said revision, are hereby repealed, and the sections applicable thereto shall be in force in lieu thereof." As a result of this legislation section 2174 became and has since remained a substantive feature of the naturalization laws, and, as no such restriction as that made by the act of 1874 is to be found in such revision, the section is subject only to such limitation as is to be gathered from its own terms. See U. S. v. Bowen, 100 U. S. 508, 25 L. Ed. 631; Murdock v. Memphis, 87 U. S. 590, 22 L. Ed. 429. And such has been the uniform construction by those having occasion to consider it. The act of June 9, 1874, has never been regarded as applying to it, whether in publications directly authorized by Congress or in compilations put forth by the division of naturalization for the guidance of its officials. Indeed, it has been regarded as repealed by subsequent legislation. See 2 Supp. R. S. 139, note of commissioner to chapter 260. This being the present state of the legislation, and section 2174 being sufficiently broad to embrace "every seaman," coastwise or other, the construction contended for cannot obtain.

[2] The further objection is made, or at least suggested, that the certificates of discharge presented by petitioner are not of the character contemplated by the statute. As to the two masters' certificates, counsel for the government says in his brief:

"It is believed that the 'certificate of discharge and good conduct,' required to be produced under the provisions of section 2174, is the official discharge certificate which masters of ocean-going vessels are required under maritime laws and regulations to give to seamen on such vessels upon their discharge, and not a simple unofficial statement of service, signed by the master of the vessel."

And as to the two certificates presented from shipping commissioners it is said:

"It is not believed that even a discharge certificate from a vessel engaged in the local coast trade made before a shipping commissioner is the certificate of discharge and good conduct required by this act, because there is, I believe, nothing in the maritime laws or regulations requiring such certificates, and it is not believed that the shipping commissioner has properly and officially anything to do with such discharges, and that such a certificate, if given, has no legal standing or value."

The objection to the masters' certificates is answered by section 4504, R. S. (U. S. Comp. St. 1901, p. 3063), which provides:

"Nothing in this title, however, shall prevent the owner, or consignee, or master of any vessel except vessels bound from a port in the United States to any foreign port, * * * from performing, himself, so far as his vessel is concerned, the duties of shipping-commissioner under this title."

As one of the duties of shipping commissioners is to grant such certificates, this provision obviously confers upon the master such authority.

The objection to the certificates from the shipping commissioners is perhaps covered by what has been said under the first objection; but, moreover, it ignores the provision of the act of June 19, 1886 (Stats. 1886, c. 421, § 2, p. 80 [U. S. Comp. St. 1901, p. 3064]):

"That shipping commissioners may ship and discharge crews for any vessel engaged in the coastwise trade between the United States and the Dominion of Canada, or Newfoundland, or the West Indies, or the Republic of Mexico, at the request of the master or owner of such vessel," etc.

There being no limitation in the statute as to the effect of such certificates when issued by masters or commissioners under these provisions, it must be presumed that they were intended to subserve the same office as certificates required to be issued by shipping commissioners to seamen on merchant vessels in the foreign trade, and that they are to be accorded the like effect as official acts.

I conclude, from these considerations, that the applicant is within the law, and that his evidence satisfies its requirements. An order will accordingly be entered granting the application.